UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JULIANA EE,

               Plaintiff,                                      Civil No. 07-1728-HA

               v.                                     OPINION AND ORDER

WASHINGTON COUNTY, BENTON
COUNTY, LINN COUNTY, political
subdivisions of the State of Oregon,
OREGON CASCADES WEST COUNCIL
OF GOVERNMENTS, an intergovernmental
agency operating in the State of Oregon, and
DOUGLAS MacELLVEN, KATIE
HARRIS, DON JOHNSON, and KIM
GROOMS, in their individual and official
capacities,

               Defendants.

_____

HAGGERTY, District Judge:

     Plaintiff Juliana Ee brings a Complaint against defendants asserting claims under 42

U.S.C. §§ 1981, 1983, and 1985; and for state law claims of intentional interference with

business relations, and defamation.  Defendants Benton County, Linn County, Oregon Cascades

West Council of Governments (COG), Don Johnson, and Kim Grooms filed a Motion for

Summary Judgment [69] and a Motion to Strike [132].  Oral argument was heard on February

11, 2010.  For the following reasons, defendants' motions are granted in part and denied in part.

-1-    OPINION AND ORDER

**FACTUAL BACKGROUND**

Nearly all facts in this case are disputed.  The following factual summary is stated in a light favorable to plaintiff, the non-moving party, and does not necessarily reflect the facts likely to be proved at trial.  Additional facts will be addressed as necessary in analyzing defendants' Motion.

Plaintiff is Chinese but has been speaking English for forty-five years and is fluent.  Pl.'s Concise Statement of Material Facts (Pl.'s Facts) ¶ 1.  In 2001, plaintiff, a psychologist, contracted with the Portland Veterans Administration Medical Center (PVAMC) to perform compensation and pension (C&P) examinations of veterans with psychiatric disorders including Post Traumatic Stress Disorder (PTSD).  Defs.' Concise Statement of Material Facts (Defs.' Facts) ¶¶ 2-3.  As a C&P examiner, plaintiff's job was to review medical records, interview veterans, diagnose mental health issues, and determine if any diagnosed conditions were linked to service-connected incidents.  *Id.*; Pl.'s Facts ¶ 10.

Defendant Don Johnson (Johnson) was employed by COG during all relevant time periods as a county veterans service officer (CVSO) providing services to veterans in Benton County.  Defs.' Facts ¶¶ 9-10.  County veterans service officers assist veterans in obtaining benefits from the VA and their goal is to maximize the benefits received by the veterans they assist.  *Id.*  Defendant Kim Grooms (Grooms) was a VSO for Linn County until 2006, when she became the County's CVSO.  *Id.* ¶ 12;  Pl.'s Facts ¶ 17.  Benton County provided services to some Linn County veterans and Linn County did the same for some Benton County veterans.  Pl.'s Facts ¶ 18.

Plaintiff's contract with the PVAMC was a year-to-year contract, which expired

-2-    OPINION AND ORDER

automatically unless renewed by the mutual assent of the PVAMC and plaintiff. *Id*. ¶ 2.

Plaintiff's contract was renewed annually until 2007, when the PVAMC decided not to renew her

contract. *Id*. ¶ 30. Plaintiff alleges that the PVAMC's refusal to renew her contract was induced

by actions taken by defendants against plaintiff as a result of her gender and Asian ancestry.

Defendants contend that the PVAMC decided not to renew plaintiff's contract based on

complaints from disparate sources concerning the "overwhelming complaints about plaintiff's

skills in interacting with veterans during her exams." *Id*.

There is no official VA policy regarding Asian theater veterans and their potential

prejudices against Asian individuals, although the VA provides some training regarding this

issue and condones noting a veteran's preference not to be examined by an Asian doctor.

Veterans generally cannot choose which examiner they see and are not allowed to "doctor-shop."

Pl.'s Facts ¶¶ 9, 20.

Johnson began calling the PVAMC to complain about plaintiff shortly after she began

working as a C&P examiner. Pl.'s Facts ¶ 22. When calling to complain, Johnson would refer to

plaintiff as "that Asian woman" or "that Oriental lady." *Id*. He stated that he did not want "his

men" seen by her and called several times per week, seeking to have his clients assigned to other

examiners. *Id*. Johnson instructed his veterans to avoid being examined by plaintiff, and urged

them to complain about plaintiff to the VA and to congressional offices. *Id*. ¶ 24. Other VSOs

also made complaints about plaintiff, including Grooms. *Id*. ¶¶ 24-27.

Grooms felt that veterans should not be forced to work with female C&P examiners and

although she acknowledged errors in other examiners' reports, she never complained about any

other examiner. Pl.'s Facts ¶ 27.

-3-    OPINION AND ORDER

On July 26, 2005, Johnson sent an email to all VSOs in his directory alleging that plaintiff had "fabricated evidence" and had sabotaged veterans' claims. Pl.'s Facts ¶ 26. Johnson asked other VSOs to share complaints about plaintiff and stated that he wanted her removed as an examiner. A number of VSOs responded to the email including Grooms and defendant Douglas MacEllven. *Id.* Grooms stated that she believed most veterans were uncomfortable with plaintiff because of her ethnicity. *Id.* ¶ 27.

Many of the initial complaints from VSOs pertained to plaintiff's ethnicity and caused Dr. Jim Tuchschmidt, the head of PVAMC, to question their validity. Pl.'s Facts ¶ 33. Doctor Tuchschmidt ordered an independent audit of plaintiff's C&P reports. *Id.* The audit revealed that plaintiff's examinations were accurate. *Id.* Thereafter, complaints about plaintiff focused on the manner in which she conducted her examinations. *Id.* When plaintiff's contract was renewed in 2004 and 2006, plaintiff was performing her job competently. Pl.'s Facts ¶ 19.

In October of 2006, the PVAMC held a VSO conference in Yachats, Oregon. At the conference, Johnson yelled at Dr. Tuchschmidt, calling plaintiff a "horrible" examiner and questioning why they would use a "Vietnamese" examiner. Pl.'s Facts ¶ 34. Other VSOs also vocalized complaints about plaintiff including Grooms. *Id.* In 2007, the PVAMC decided not to renew plaintiff's contract. Plaintiff was the only contract C&P examiner whose contract was not renewed in 2007. *Id.* ¶ 40.

## STANDARDS

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.,*

-4-    OPINION AND ORDER

929 F.2d 1404, 1409 (9th Cir. 1991).  The moving party carries the initial burden of proof and

meets this burden by identifying portions of the record on file that demonstrate the absence of

any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once

the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through

the production of probative evidence that there remains an issue of fact to be tried.  *Id.*

The court must view the evidence in the light most favorable to the non-moving party.

*Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted).

All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the

moving party.  *MetroPCS, Inc. v. City & County of S.F.*, 400 F.3d 715, 720 (9th Cir. 2005)

(citation omitted).  Where different ultimate inferences may be drawn, summary judgment is

inappropriate.  *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R.

Civ. P. 56(c)).

Deference to the non-moving party has limits.  The non-moving party "must set forth

specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The "mere

existence of a scintilla of evidence in support of the [non-moving party's] position [is]

insufficient."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).  Where "the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is

no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

587 (1986) (citation omitted).

## DISCUSSION

Plaintiff brings federal claims pursuant to 42 U.S.C. §§ 1981, 1983, and 1985 alleging

that COG, Benton, and Linn County VSOs, in concert with other VSOs, unlawfully sought to

have plaintiff removed as a C&P examiner because plaintiff is an Asian female in violation of

the Fourteenth Amendment to the United States Constitution.  Plaintiff also brings state law

claims of defamation and intentional interference with a contract.  Defendants Benton County,

Linn County, COG, Don Johnson, and Kim Grooms move for summary judgment on all claims.

Defendants have also filed a Motion to Strike Portions of Plaintiff's Concise State of

Material Fact.  Defendants' Motion to Strike is granted in part and denied in part.  Only

admissible evidence has been considered by this court in its analysis of defendants' Motion for

Summary Judgment.

**Proper Parties**

On defendants' motion, the governmental defendants are substituted for Grooms and

Johnson on all state law claims pursuant to Or. Rev. Stat. (ORS) 30.265(1).

Defendants contend that Benton County should be dismissed from this action because

Benton County merely contracted with COG to furnish VSO services.  Benton County did not

exercise control over the provision of those services and did not employ either Johnson or

Grooms.  Although Johnson provided services to Benton County veterans and advertised himself

as the Benton County CVSO, he was trained and supervised by COG.  Because Benton County

did not exercise any control over Johnson, and did not establish any policies or procedures for

the provision of veterans' services, Benton County is dismissed from this action.

**Section 1983 Claim**

Section 1983 creates liability for a person acting under color of law who deprives another

of a right guaranteed by the Constitution or federal law.  *Jones v. Williams*, 297 F.3d 930, 934

(9th Cir. 2002).  To prove her case under § 1983, plaintiff must prove that (1) defendants acted

"under color of state law," and (2) defendants deprived her of a federal right. *Id.* (quoting *Parratt v. Williams*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). Plaintiff alleges the deprivation of her right to equal protection in violation of the Fourteenth Amendment because defendants intentionally discriminated against her on the basis of her race and/or gender.

To establish a *prima facie* case of intentional discrimination under § 1983, plaintiff need not satisfy any particular test, but must simply "produce evidence sufficient to establish a genuine issue of fact as to the defendant's motivations" for the allegedly discriminatory actions taken. *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991). "Discriminatory intent may be proved by direct or indirect evidence." *Id.*

If plaintiff makes a *prima facie* case, the burden of production shifts to defendants to articulate some legitimate, non-discriminatory reason for the adverse actions. *Rodriguez v. General Motors Corp.*, 904 F.2d 531, 533 (9th Cir. 1990). If defendants meet this burden of production, plaintiff must "show that the articulated, legitimate reason was, in fact, pretextual." *Id.* Where the articulated legitimate reasons are credibly challenged as pretextual, the judgment of credibility must be made by the trier of fact. *Id.*

Defendants Johnson and Grooms were at all relevant times acting under color of law. Defendants contend, however, that COG and Linn County cannot be held liable for their actions under a theory of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

A plaintiff may impose § 1983 liability against a municipality in one of three ways: "(1) by showing a longstanding practice or custom which constitutes the standard operating

-7-    OPINION AND ORDER

procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (citation and internal quotation marks omitted).  An unconstitutional policy or custom need not be carried out by the municipality's official lawmakers to subject the municipality to liability.  Liability may lie against a municipality for conduct by those "whose acts or edicts may fairly be said to represent official policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (quoting *Monell*, 436 U.S. at 694).  However, municipal liability only attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. *Id*. at 484.

As the supervising CVSOs for Benton and Linn Counties, Johnson and Grooms were acting as final policymakers in the area of veterans services.  County veterans service officers hold a management position within their counties and are delegated authority to establish practices and procedures for the provision of veterans' services.  Pl.'s Facts ¶¶ 14, 16.  *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989) (holding that the "trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue").  The record reflects that, as a matter of state law, Johnson and Grroms were operating in a management position with almost no direct oversight in the area of veterans services, and that their decisions with respect to the alleged discriminatory

-8-    OPINION AND ORDER

actions and practices were final.  Johnson and Grooms made deliberate decisions, discussed

below, intended to result in the removal of plaintiff as a C&P examiner that went beyond their

statutory duties as CVSOs.  Plaintiff has also demonstrated that they were delegated authority to

manage the provision of veterans services.  Accordingly, defendants' *Monell* argument is

rejected.

Plaintiff, an Asian woman, has established a *prima facie* case of intentional

discrimination against defendants.  She has adduced evidence demonstrating that: she was

performing her job capably and according to her employer's legitimate expectations; defendants

nevertheless sought to have her removed from her position as a C&P examiner; other non-Asian

and male examiners were not similarly targeted; and the racial and sexist tone of defendants'

complaints about plaintiff establish a genuine issue of fact regarding defendants' motivations.

Plaintiff has shown that an independent audit of her examinations demonstrated that they were

accurate, VA personnel were happy with her examinations, and that defendants sought to have

her fired by making racial and gender-based complaints, encouraging veterans to seek other

examiners and complain about plaintiff, and by conspiring with other VSOs to have plaintiff

fired.  These actions were not taken with respect to other examiners.

However, defendants have also met their burden of production by articulating a

legitimate, non-discriminatory reason for the adverse actions taken.  There is evidence indicating

that defendants were attempting to have plaintiff removed as a C&P examiner not because

plaintiff is an Asian female, but because defendants were attempting to maximize the benefits

received by their client veterans and because they believed she was not performing her job

adequately.  Additionally, there is evidence suggesting that some of the complaints made by

-9-    OPINION AND ORDER

defendants regarding plaintiff originated with upset veterans. The fact that plaintiff is Asian, and made some Asian-theater veterans uncomfortable during examinations, may have contributed to defendants' perception that she was not producing accurate examination reports.

Defendants' reporting of complaints made by veterans about plaintiff, and their attempts to maximize their clients' benefits, does not create § 1983 liability. Asian-theater veterans are entitled to request non-Asian examiners and to make complaints about examiners. Defendants are similarly entitled to report these veterans' concerns without liability attaching. Defendants contend that the only actions they took were to relay complaints made by veterans at the request of the PVAMC. However, the record suggests that defendants also actively sought to undermine plaintiff's contract by making complaints themselves, and by encouraging veterans to make complaints to congressional offices and request different examiners. The racial and sexist tone of the complaints and actions taken by defendants present a credible challenge to defendants' legitimate articulated reasons. Accordingly, a question of material fact exists regarding defendants' motivations.

Defendants also argue that their actions were not a moving force in the PVAMC's decision not to renew plaintiff's contract and that plaintiff was not injured by their allegedly discriminatory actions. However, there is a question of material fact regarding whether defendants' actions were a moving force in the non-renewal of plaintiff's contract. That question, along with the appropriate measure of possible damages, can be best resolved by a trier of fact.

**Section 1981 Claim**

Plaintiff's § 1981 claim requires that she prove essentially the same elements as her § 1983 claim, but with a focus on her right to be free from racial discrimination in the making of

-10-    OPINION AND ORDER

contracts.  As discussed above, plaintiff has carried her burden by creating a question of material

fact regarding whether she was intentionally discriminated against on the basis of her Asian

ancestry, and by demonstrating that the discrimination interfered with her ability to contract with

the PVAMC.  Plaintiff may proceed with her § 1981 claim.

**Section 1985 Claim**

Plaintiff's § 1985 claim requires that she prove four elements: "(1) a conspiracy; (2) for

the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

protection of the laws, or of the equal privileges and immunities under the laws; and (3) an act in

furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or

deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*,

978 F.2d 1529, 1536 (9th Cir. 1992) (citation omitted).

For the purposes of defendants' motion, the only difference of any import between

plaintiff's § 1985 and § 1983 claims is the conspiracy element.  To prove a conspiracy between

defendants, plaintiff must "offer evidence of an agreement or 'meeting of the minds' to violate

her constitutional rights" to equal protection.  *Nunley v. City of Los Angeles*, 121 F.3d 716, No.

95-56090, 1997 WL 429183, *2 (9th Cir. July 31, 1997) (citing *Ward v. Equal Employment

Opportunity Comm'n*, 719 F.2d 311, 314 (9th Cir. 1983)).  "A conspiracy may be inferred from

conduct and need not be proved by evidence of an express agreement." *Id.*

Plaintiff has offered evidence from which a reasonable jury could infer that defendants

conspired to have plaintiff fired in violation of her right to be free from racial discrimination.

Namely, Johnson sent an email to all VSOs in his directory requesting complaints about plaintiff,

stating that he wanted her removed as an examiner.  Pl.'s Facts ¶ 26.  Thereafter, CVSOs

-11-    OPINION AND ORDER

including Grooms responded to the email and discussed having plaintiff removed as a C&P examiner. Given the racial tone of some complaints made by defendant VSOs about plaintiff, and racist behavior tolerated by defendant counties, a question of fact exists as to whether defendants conspired to deprive her of equal protection on account of her race.

**Qualified Immunity**

Defendants contend that Johnson and Grooms are entitled to qualified immunity for their actions. Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 US 800, 818 (1982). Defendants are entitled to qualified immunity where they "reasonably could have believed that their conduct was lawful 'in light of clearly established law and the information that they possessed.'" *Cohen v. San Bernardino Valley College*, 92 F.3d 968, 973 (9th Cir. 1996) (quoting *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989)). When analyzing an assertion of qualified immunity, the court must look at the particular facts of the case and the particular rights invoked. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). If the contours of the right are not sufficiently clear, the officials are entitled to qualified immunity. *Id.* However, an official action is not protected by qualified immunity simply because "the very action in question" has not previously been held unlawful. *Id.* (citations omitted).

Defendants contend that they are entitled to qualified immunity because they merely reported veterans' complaints at the request of the PVAMC. They assert that "no reasonable officer would have believed that relaying complaints from disabled veterans would violate the Equal Protection Cluase." Defs.' Br. 18. While this assertion is accurate, this court must analyze

-12-    OPINION AND ORDER

the facts in a light favorable to plaintiff.  In that light, defendants did not merely report veterans' complaints, but actively discriminated against plaintiff and conspired to have her removed from her job as a C&P examiner on account of her race.  "Few principles of law are more firmly stitched into our constitutional fabric than the proposition that a [government] must not discriminate against a person because of his race."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 151-152 (1970).  A reasonable person would understand that attempting to get somebody fired on account of her race is unlawful.  Defendants' request for qualified immunity is rejected.

### Tort Claim Notice

Pursuant to ORS 30.275, a plaintiff must give tort claim notice to public bodies no later than 180 days after the alleged loss or injury on all state law claims.  Here, plaintiff sent tort claim notice to Linn County and Benton County on May 14, 2007, but failed to send notice to COG.  As discussed above, COG, not Benton County, is the proper defendant.  Because COG did not receive actual tort claim notice, plaintiff's state law claims against COG must be dismissed.  Therefore, the only remaining defendant for plaintiff's defamation and intentional interference with business relations claims is Linn County.  Accordingly, this court is limiting its review of plaintiff's state law claims to actions taken by defendant Grooms on behalf of Linn County.  While plaintiff has alleged that Johnson also conducted some work for Linn County veterans, nothing in the record suggests that his actions taken on behalf of those veterans should subject Linn County to liability on plaintiff's state law claims.

### Defamation

In order to establish a claim for defamation, plaintiff must show that Grooms harmed plaintiff by making a defamatory statement concerning plaintiff to a third party.  *Wallulis v.*

-13-    OPINION AND ORDER

*Dymowski*, 918 P.2d 755, 758 (Or. 1996).  A statement is defamatory "if it tends to harm the reputation of another as to lower him the estimation of the community or to deter third persons from associating or dealing with him."  *Walleri v. Federal Home Loan Bank of Seattle*, 83 F.3d 1575, 1583 (9th Cir. 1996).

Because the assessment of a defamation claim is a statement-specific inquiry, it is important to identify which statements are alleged to have defamed plaintiff.  *Morlan v. Qwest Dex, Inc.*, 332 F.Supp.2d 1346, 1360 (D.Or. 2004).  This court construes plaintiff's allegations as asserting that Grooms exaggerated the number of veterans who made complaints about plaintiff and wrote that it was insulting for plaintiff to be examining veterans because of her race and gender.

Assuming without deciding that these statements were defamatory, this court finds that plaintiff's defamation claim fails because the communications were privileged.  Under Oregon law, a statement is conditionally privileged if: "(1) it was made to protect the interests of defendants; (2) it was made to protect the interests of plaintiff's employer; or (3) it was on a subject of mutual concern to defendants and the persons to whom the statement was made."  *Wattenburg v. United Med. Labs., Inc.*, 525 P.2d 113 (Or. 1974).  It is clear that the statements at issue fall within all three protected subject matters.

When statements are conditionally privileged, a plaintiff can pierce the privilege by proving the privilege was abused.  *Wallulis*, 918 P.d at 761.  Plaintiff has failed to allege the privilege was abused, and has not satisfied this burden.  However, even if plaintiff had so argued, the statements would continue to be conditionally privileged because "there can be no abuse of a conditional privilege when the speaker 'republishes a defamatory statement . . . under

-14-    OPINION AND ORDER

circumstances that make it clear that it is an allegation, not a fact, that is being repeated.'"
*Morlan*, 332 F. Supp. 2d at 1362; (quoting *Vanderselt v. Pope*, 963 P.2d 130, 136 (Or. Ct. App. 1998)).  Taken in the light most favorable to plaintiff, Grooms was merely republishing allegations made by client veterans.  Accordingly, plaintiff's defamation claim is dismissed.

**Intentional Interference with Business Relations**

Plaintiff argues that defendants intentionally interfered with plaintiff's contractual relationship with the PVAMC.  Plaintiff alleges that Grooms was acting within the scope of her employment and was at least partially motivated by a desire to maximize her clients' benefits. Pl.'s Br. 4-5.  These allegations defeat plaintiff's interference claim.  "Employees are immune from liability for intentional interference with a contractual relationship provided that the employee is (1) acting within the scope of his employment and (2) acting with at least partial intent to benefit the employer."  *Blackthorne v. Posner*, 883 F. Supp. 1443, 1456 (D.Or. 1995) (citing *Welch v. Bancorp Mgmt. Advisors*, 675 P.2d 172, 177 (Or. 1983), *modified on other grounds*, 679 P.2d 866 (Or. 1984)).  Accordingly, plaintiff's intentional interference with business relations claim is dismissed.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

-15-    OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment [69] is DENIED IN PART and GRANTED IN PART.  Benton County is DISMISSED as a party from this action, and plaintiff's state law claims against defendants Johnson, Grooms, COG, and Linn County are DISMISSED.  Plaintiff may proceed with her claims brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985.  Defendants' Motion to Strike [132] is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED this  25   day of February, 2010.

_____ /s/ Ancer L. Haggerty _____
Ancer L. Haggerty
United States District Judge

-16-    OPINION AND ORDER